IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Moua Vue, | CIV-09-1939-PHX-PGR (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Katrina Kane, et al., | |
| Respondents. | |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

On September 18, 2009, Petitioner Moua Vue (A071-012-202), who is represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioner is a native and citizen of Laos, who entered the United States as a refugee in December of 1989. (Doc. 17, Exh. 3.)

Between the years of 1993 and 2008, Petitioner was arrested nine times for crimes ranging from burglary to theft to possession of a controlled substance. (Doc. 17, Exh. 4.) On November 20, 2007, Petitioner pled guilty to Possession of a Controlled Substance, Methamphetamine. (Doc. 17, Exh. 5.) On May 11, 2009, Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") and was apparently being held because

he failed to apply for and acquire lawful permanent residence within one year of his entry in the United States as required by 8 U.S.C. § 1159(a).[1] (Doc. 17, Exh. 3; Doc. 9.)

Under § 1159(a), a refugee who has been physically present in the United States for at least one year and has not acquired permanent resident status must "return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant." (Doc. 9.) According to Petitioner, ICE interprets § 1159(a) to authorize the indefinite detention of any refugee who has not become a lawful permanent resident within one year of entry. (Doc. 9.)

Petitioner argues that ICE's interpretation of § 1159(a) violates the Constitution of the United States and the Immigration and Nationality Act ("INA") and that no statutory or regulatory authority otherwise exists to authorize his continued detention. (Doc. 9.) Petitioner claims that his detention violates his Fifth Amendment rights to both substantive and procedural due process. (Doc. 9.) He also claims that his detention is not authorized by the INA. (Doc. 9.) Petitioner seeks an order compelling his immediate release from custody. (Doc. 9.)

On September 2, 2010, Magistrate Judge David K. Duncan issued an Order denying, *inter alia*, Petitioner's amended motion to consolidate. (Doc. 33.) In its Order, the Court stated:

---

[1] On August 19, 2009, Petitioner applied to the Department of Homeland Security ("DHS") to adjust his status from refugee to lawful permanent resident. (Doc. 17, Exh. 4.) On that same date, Petitioner also submitted an application seeking to waive grounds for excludability. (Doc. 17, Exh. 4.) The United States Citizenship and Immigration Service denied both applications on October 22, 2009, finding Petitioner inadmissible due to his criminal convictions for Theft, Unlawful Taking of a Vehicle, and Possession of a Controlled Substance. (Doc. 17, Exh. 4.)

On October 13, 2009, Petitioner was placed in removal proceedings through the issuance, service, and filing of a Notice to Appear ("NTA"), which charged him with removability as a result of the 2007 conviction for Possession of a Controlled Substance, Methamphetamine. (Doc. 17, Exh. 1.) On November 10, 2010, Petitioner was ordered removed to Laos and he waived appeal. (Doc. 17, Exh. 2.) On February 12, 2010, Petitioner was released under an Order of Supervision, pending removal. (Doc. 37 at 2.)

- 2 -

> The Court agrees with the government that neither consolidation of the cases nor a stay and transfer to a single judge is appropriate, and will deny the motions to consolidate. ...
>
> The government is correct that although the thirteen petitioners initially filed habeas petitions seeking immediate release from custody, alleging that their continued detention was unlawful, in all thirteen cases their current status differs from that described in their original petitions. Specifically, either the authority under which the petitioners are being detained by the government has changed or their custody status has changed.

(Doc. 33 at 4-5.)

Regarding the instant Petitioner, the Court found that according to the most recent information in the Immigration Customs and Enforcement database, Petitioner has been issued a final order of removal, and has been released under an Order of Supervision, pending his removal. (Doc. 33 at 5.)

Accordingly, Petitioner's custody status having changed, the Court ordered Petitioner to show good cause why this action should not be dismissed as moot. (Doc. 35.) On September 19, 2010, Petitioner filed his response to the Court's Order. (Doc. 36.)

Petitioner first argues that this case "falls squarely within the 'capable of repetition yet evading review' exception to mootness." Specifically, he contends that the evidence overwhelmingly establishes that Respondents have a longstanding policy of detaining refugees under 8 U.S.C. § 1159, but states that since the average length of detention under § 1159 is less than the amount of time required to adjudicate a habeas petition, he and other refugees will be deprived of any opportunity to seek judicial review of their detention. In other words, Petitioner asserts that a finding of mootness in the instant case will permit Respondents to indefinitely continue its policy of arbitrarily detaining refugees for months with no civil or criminal charges and no access to bond.

Next, Petitioner alleges that even if this Court were to find that Respondents have discontinued the policy of detaining refugees under § 1159, the "voluntary cessation" exception to mootness applies. Petitioner states that the mere cessation of illegal activity in response to pending litigation does not moot a case unless the party alleging mootness can show that the allegedly wrongful behavior could not reasonably be expected to recur.

- 3 -

Petitioner claims that on November 10, 2009, Respondents issued an internal memorandum purporting to clarify their policy on the detention of unadjusted refugees, claiming that unadjusted refugees shall be issued a NTA and placed in removal proceedings within 72 hours of apprehension.[2] Petitioner complains that this memorandum falls far short of meeting Respondents' burden to persuade the court that the challenged conduct cannot reasonably be expected to recur because the memorandum is unenforceable insofar as it violates current Board of Immigration Appeals ("BIA") and circuit case law and because Respondents have failed to comply with their own memorandum.

On September 29, 2010, Respondents filed a Reply to Response to Order to Show Cause. (Doc. 37.)

Initially, Respondents argue that because Petitioner is no longer detained, his habeas petition alleging that his previous detention was unauthorized is now moot since there is no current case or controversy before the Court. To the extent Petitioner contends that he or others may again be subject to detention under § 1159, Respondents state that Petitioner has received a final order of removal and has failed to demonstrate that he will again be subjected to detention pursuant to § 1159. Further, Respondents argue that Petitioner's habeas petition

---

[2] On November 10, 2009, Katrina S. Kane, Field Office Director of the Phoenix Field Office, Office of Detention and Removal Operations, issued a guidance memorandum clarifying Field Office policy regarding custody decisions of unadjusted refugees. (Doc. 37, Exh. 1.) The memorandum explained that decisions concerning detention must be made in accordance with 8 U.S.C. § 1226 and 8 C.F.R. § 287.3(d), which requires that, in the absence of an emergency or other extraordinary circumstances, a determination must be made within 48 hours whether to release an alien or place him in removal proceedings. (Doc. 37, Exh. 1.) Additionally, on May 10, 2010, James Chaparro, ICE's Executive Director of Enforcement and Removal Operations, issued a guidance memorandum to all ICE Field Offices throughout the United States. (Doc. 37, Exh. 2.) The memorandum clarified that an unadjusted refugee's failure to adjust status alone is not a sufficient ground to place him in removal proceedings or a proper ground for detention, and further stated that unadjusted refugees must be detained in accordance with 8 U.S.C. § 1226 and 8 C.F.R. § 287.3(d), and a determination must be made within 48 hours whether to release the alien or place him in removal proceedings if a violation of the INA can be established that is unrelated to the alien's failure to adjust. (Doc. 37, Exh. 2.)

seeks relief solely for himself and allege that Petitioner should not be permitted to cast his habeas petition as a generic challenge to an alleged improper policy claiming that this case falls within the "capable of repetition yet evading review" exception. In any event, Respondents state that DHS has issued written guidance (memoranda issued on November 10, 2009 and May 10, 2010) explaining that ICE must make decisions surrounding the detention of unadjusted refugees in accordance with 8 U.S.C. § 1226 and 8 C.F.R. § 287.3(d), which requires that – in the absence of extraordinary circumstances – a determination must be made within 48 hours whether to release an alien or place him in removal proceedings.

As to Petitioner's "voluntary cessation" argument, Respondents contend that, contrary to Petitioner's assertions, the guidance memoranda and evidence of compliance with the memoranda establish that the allegedly wrongful behavior could not reasonably be expected to recur. Respondents claim that Petitioner's allegation that the memoranda are unenforceable as violative of current BIA and circuit case law is erroneous, and argue that Petitioner has failed to present any evidence that Respondents have not complied with the memoranda.

The case or controversy provision of Article III, § 2 of the Constitution "subsists through all stages of federal judicial proceedings, trial and appellate ... . The parties must continue to have a 'personal stake in the outcome' of the lawsuit." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477-478 (1990)). This means that, throughout the litigation, Petitioner "must have suffered, or be threatened with, an actual injury traceable to the [Respondent] and likely to be redressed by a favorable judicial decision." Id. (quoting Lewis, 494 U.S. at 477). Whether a case does not meet the case or controversy requirements of Article III, and is thus moot, is a question of federal law upon which the federal court "must pronounce final judgment." Liner v. Jafco, 375 U.S. 301, 304 (1964) (citing Love v. Griffith, 266 U.S. 32 (1924)).

A claim which is rendered moot may, nonetheless, survive dismissal if it is "capable of repetition yet evading review." Spencer, 523 U.S. at 17. Such a claim, however, is only recognized in "exceptional situations." City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983). Two criteria must be fulfilled: (1) the action which the claim challenges must be "in its duration too short to be fully litigated prior to its cessation or expiration," and (2) there must be a "reasonable expectation" that "the same complaining party [will] be subject to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975). "Reasonable expectation" does not refer to a "mere physical or theoretical possibility," but to a "demonstrated probability." Murphy v. Hunt, 455 U.S. 478, 482 (1982).

Under another recognized exception, the "voluntary cessation" doctrine, the mere cessation of illegal activity in response to pending litigation does not moot the case unless the party alleging mootness can show that the "allegedly wrongful behavior could not be expected to recur." Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). This responsibility on the part of the defendant to overcome the exception to the mootness doctrine has been characterized as "stringent" and a "formidable burden." Friends of the Earth, 528 U.S. at 189-90. Defendants have been found to satisfy their burden by, for example, submitting an affidavit disavowing any intent to ever repeat the challenged conduct. See, e.g., Picrin-Peron v. Rison, 930 F.2d 773, 776 (9th Cir.1991) (declaration of director of Los Angeles district office of INS swearing to statement that habeas petitioner would continue to be paroled and would not be re-detained absent his reinvolvement with criminal justice system); see also Lane v. Williams, 455 U.S. 624, 629 n.8 (1982) ( habeas petition found moot upon State's representation in its brief that petitioner had been "totally discharged," and upon Court's "understanding that the State may not subject [petitioner] to any further detention or restraint").

In the instant matter, the Court finds that Petitioner fails to demonstrate that his habeas claims fall under either exception to mootness. Regarding the "capable of repetition yet evading review" exception, Petitioner has not shown that he will again be subjected to

detention under 8 U.S.C. § 1159. Although Petitioner alleges that "a finding of mootness ... will permit ICE to indefinitely continue its policy of arbitrarily detaining refugees for months," Petitioner must do more than merely speculate about future possibilities.[3] Again, he must show a "'reasonable expectation' or 'demonstrated probability' that [this] same controversy will recur" between him and the Government. Murphy, 455 U.S. at 482. Here, the record indicates, and Petitioner concedes, that he has received a final order of removal. The facts of Petitioner's case, therefore, directly controvert his speculative premise that he is potentially subject to detention under § 1159 in the future.

Moreover, as set forth in Respondents' Reply, ICE has issued written guidance (memoranda issued on November 10, 2009 and May 10, 2010) explaining that decisions surrounding the detention of unadjusted refugees must be made in accordance with 8 U.S.C. § 1226 and 8 C.F.R. § 287.3(d), which requires that – in the absence of extraordinary circumstances – a determination must be made within 48 hours whether to release an alien or place him in removal proceedings. (Doc. 37, Exhs. 1, 2.) The memoranda establishing the policy regarding the detention of unadjusted refugees further demonstrate that any attempt by Petitioner to speculate about possible improper future detention fails.

Despite his final order of removal and subsequent release under an Order of Supervision, Petitioner cites United States v. Brandau, 578 F.3d 1064 (9th Cir. 2009) and United States v. Roblero-Solis, 588 F.3d 692 (9th Cir. 2009), apparently to support his position that the alleged "ongoing policy" of indefinitely detaining unadjusted refugees pursuant to § 1159 is sufficient to render the instant matter a live controversy because "other refugees" will be affected by the policy. The Court is not persuaded.

---

[3] While Petitioner argues for an exception to the mootness doctrine on behalf of himself and "other refugees," in his habeas petition, Petitioner expressly seeks relief solely for himself. (Doc. 1 at 9) (seeking "an Order declaring that Petitioner's detention by Respondents is contrary to law and unconstitutional," and "an Order that Respondents immediately release Petitioner").

In <u>Brandau</u>, the Ninth Circuit remanded the defendants' challenge to a policy of full shackling at initial court appearances adopted by the Eastern District of California in order to determine mootness by conducting an evidentiary hearing on the nature of the current shackling policy in the various district courts in the Eastern District. <u>See</u> 578 F.3d at 1065-68. Although the full shackling policy had been changed in writing after the defendants made their initial appearances to allow for individualized determinations as to whether full shackling was necessary, the Court of Appeals was unable to determine whether, in practice, there was an "ongoing policy" of full shackling, or full shackling without individualized determinations, and whether the same shackling policy applied to in-custody and out-of-custody defendants. <u>See id.</u>

In <u>Roblero-Solis</u>, the Ninth Circuit considered whether the procedure adopted by the District of Arizona for taking pleas en masse complied with Rule 11 of the Federal Rules of Criminal Procedure. <u>See</u> 588 F.3d at 693-98. Prior to engaging in the Rule 11 analysis, the court *sua sponte* raised the question of whether the specific appeals of the defendants in question were moot since each defendant had served his sentence and had been deported. <u>See id.</u> In finding that the illegal entry defendants' challenge to the district court procedure was not moot, the court found that the defendants faced various adverse consequences such as longer periods during which they would be ineligible to enter legally and that their sentences were so short that no appeal was practicable. <u>See id.</u>

Unlike <u>Brandau</u>, the 2010 promulgation of written DHS guidance governing the detention of unadjusted refugees demonstrates the absence of an ongoing policy of indefinitely detaining unadjusted refugees pursuant to § 1159, and Petitioner fails to present any evidence to indicate otherwise. Petitioner relies on: (1) a July 1, 2009 declaration of a former Arizona immigration attorney who describes her first encounter with unadjusted refugees in 2002 (Doc. 2, Exh. 3); (2) a February 10, 2008 article printed in the Arizona Daily Star on the practice of detaining unadjusted refugees (Doc. 2, Exh. 5); (3) a June 18, 2009 letter to Janet Napolitano regarding the policy of detaining refugees (Doc. 2, Exh. 4);

1 and (4) a December 2009 report from Human Rights Watch on the detention of unadjusted
2 refugees (CIV-09-1410-PHX-SRB (DKD), Doc. 33, Exh. 1). Notwithstanding the apparent
3 credibility concerns surrounding Petitioner's submissions, any declaration, article, letter, or
4 report describing events which pre-date the guidance memoranda issued by DHS fails to
5 support an ongoing policy in 2010 of indefinitely detaining unadjusted refugees under §
6 1159.

7 Further, contrary to Roblero-Solis, in his habeas petition, Petitioner sought individual
8 relief in the form of release from alleged unauthorized, indefinite detention. Although he
9 claims that the average length of detention under § 1159 is less than the amount of time
10 required to adjudicate a habeas petition, he has not described any adverse consequences –
11 similar to the defendants in Roblero-Solis – stemming from the basis for his previous
12 detention. And, the Ninth Circuit in Roblero-Solis did not hold that an attenuated and
13 speculative possibility of future detention is sufficient to overcome mootness.

14 Because Petitioner cannot show that he will again be subjected to detention under 8
15 U.S.C. § 1159, and there is no evidence of any "ongoing policy" of alleged unlawful
16 detention, Petitioner fails to demonstrate that his habeas petition falls under the "capable of
17 repetition yet evading review" exception to mootness.

18 As to Petitioner's contention that the "voluntary cessation" exception to mootness
19 applies to this case, the Court finds that Defendants have met their burden and demonstrated
20 that the "allegedly wrongful behavior could not be expected to recur." In support of their
21 position, Respondents have submitted the guidance memoranda from DHS laying out the
22 nationwide policy that unadjusted refugees will not be detained for failure to adjust status,
23 as well as, a Declaration by Katrina S. Kane detailing the efforts undertaken to ensure that
24 DHS policy as described in the guidance memoranda is being implemented. (Doc. 37, Exhs.
25 1, 2, 3.)

26 However, citing to Matter of Garcia-Alzugaray, 19 I. & N. Dec. 407 (BIA 1986) and
27 Romanishyn v. Attorney Gen. of the United States, 455 F.3d 175 (3d Cir. 2006), Petitioner

28
- 9 -

1  claims that even if Respondents have discontinued the policy of detaining refugees pursuant
2  to § 1159, this is not enough to render the Petition moot because he contends that the
3  memoranda are unenforceable insofar as they "violate[] current BIA and circuit case law by
4  placing refugees in removal proceedings prior to a decision by an immigration official on
5  inadmissibility." The Court finds Petitioner's argument, and cases in support thereof,
6  misplaced.

7  Since Petitioner's applications to adjust his status from refugee to lawful permanent
8  resident and seeking to waive grounds for excludability were both denied on October 22,
9  2009 (Doc. 17, Exh. 4), his contention is inapplicable to him personally. To the extent
10  Petitioner attempts to argue that the memoranda are unenforceable in that they place other
11  refugees in removal proceedings prior to a decision by an immigration official on
12  inadmissibility, his claim similarly fails. As set forth previously, on May 10, 2010, James
13  Chaparro, ICE's Executive Director of Enforcement and Removal Operations, issued a
14  guidance memorandum to all ICE Field Offices throughout the United States. (Doc. 37, Exh.
15  2.) In clarifying "when and under what circumstances [ICE] Field Offices may detain
16  refugees who have failed to adjust to lawful permanent resident (LPR) status," Chaparro
17  specifically stated, *inter alia*,

> Accordingly, upon taking an unadjusted refugee into custody based upon a reasonable belief that he or she is removable, the DRO Field Office first must finalize its determination whether to place the individual in removal proceedings under INA § 240 and, if so, whether to continue detention. A refugee may not be placed in removal proceedings based on a failure to adjust status or to apply for adjustment of status because an alien's failure to adjust status or apply for adjustment under INA § 209(a) is not a ground for removability. Therefore, the only way DRO may place an unadjusted refugee in [removal] proceedings is if a violation of the INA can be established that is unrelated to the alien's failure to adjust, such as fraud or a criminal conviction that forms the basis for a charge under INA §§ 212 or 237.

24  (Doc. 37, Exh. 2 at 1-2.) This statement is entirely consistent with "current BIA and circuit
25  case law." Specifically, in In re Smriko, 23 I. & N. Dec. 836, 842 (BIA 2005), the BIA
26  found "no merit to the respondent's assertion that he is immune from removal on the basis
27  of his convictions for crimes involving moral turpitude because his refugee status has not

- 10 -

been terminated" under § 1157(c)(4). The agency noted that the statutes providing for removal refer simply to "[a]ny alien" or "the alien" – they do not distinguish between aliens admitted as refugees and any other aliens. See id. at 838 (citing 8 U.S.C. §§ 1227(a), 1229). The BIA continued stating that the "consistent reference to 'any alien' in the statutory provisions governing removal proceedings and the lack of mention of prior termination of refugee status are strong indications that aliens admitted as refugees are subject to removal proceedings without the preliminary step of terminating refugee status under section 207(c)(4)." Id. The BIA further explained that under § 1159, "a refugee whose admission has not been terminated by the Attorney General is to be inspected and examined for admission as an immigrant within the general framework for removal proceedings. Notably, [DHS] is directed to consider the admissibility of such aliens pursuant to sections 235, 240, and 241 of the Act, 8 U.S.C. §§ 1225, 1229a, and 1231 (2000). ... Section 240, in particular, provides that an alien placed in removal proceedings may be charged with 'any applicable ground of inadmissibility under section 212(a) or any applicable ground of deportability under section 237(a).'" Id. at 839.

The circuit courts have agreed with the BIA's decision in In re Smriko and have held that refugee status does not afford complete immunity from removal. See, e.g., Maiwand v. Gonzales, 501 F.3d 101, 106-07 (2d Cir. 2007) (stating that "[e]ven if he retained his refugee status, he would have remained subject to removal for committing a drug trafficking offense. *See* 8 U.S.C. § 1159 (requiring refugees to 'return or be returned to the custody of the Department of Homeland Security [within a year of their entry] for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of,' *inter alia*, 8 U.S.C. § 1229a")); Kaganovich v. Gonzales, 470 F.3d 894, 898 (9th Cir. 2006) (upholding the BIA's interpretation in light of "statutory text allowing removal of *any* alien" (emphasis in original)); Romanishyn, 455 F.3d at 185 (recognizing that "a refugee may under some circumstances be removed even if his refugee status has not been

1 terminated"). Thus, contrary to Petitioner's assertions, the Court finds that the guidance memoranda are consistent with "current BIA and circuit case law."

Petitioner, however, complains that even if the memoranda did not violate current case law, Respondents have failed to comply with their own memoranda. As evidence of non-compliance, Petitioner cites to Katrina S. Kane's Declaration and states that in a related case (Banjeglavic v. Kane, No. 2:09-cv-02523-NVW-ECV), Respondents detained an unadjusted refugee on September 25, 2009, and had still not issued a NTA by December 3, 2009 – over three weeks after the November 10, 2009 memorandum was issued. Petitioner claims that this demonstrates that nearly one month after the issuance of the guidelines, Respondents were in direct violation of their own policy.

The Court's review of Kane's Declaration reveals that on October 20, 2009, the ICE Office of Chief Counsel in Arizona disseminated guidelines from the ICE Headquarters Office of the Principal Legal Advisor concerning the arrest, detention, and processing of unadjusted refugees to the Phoenix Field Office. (Doc. 37, Exh. 3.) In order to comply with the guidelines, Kane directed every detention facility within her area of responsibility to review their population rosters for the presence of unadjusted refugees, to place them in removal proceedings, and, if appropriate, to release them from custody on a case-by-case basis. (Doc. 37, Exh. 3.) On November 10, 2009, Kane issued the guidance memorandum to all Arizona Detention and Removal Operations ("DRO") personnel. (Doc. 37, Exh. 3.) On December 3, 2009, DRO reviewed Petitioner Banjeglavic's file and determined that the circumstances of his specific case warranted his release. (Doc. 37, Exh. 3.) On December 4, 2009, DRO served Petitioner Banjeglavic with a NTA for violation of INA §§ 212(a)(6)(A)(i) and 212 (a)(2)(B)(i). (Doc. 37, Exh. 3.) On that same date, DRO released him from custody pursuant to an Order of Release on Recognizance. (Doc. 37, Exh. 3.) On December 7, 2009, the detention facilities in Kane's area of responsibility again reviewed their population rosters for the presence of unadjusted refugees that might require issuances

of NTAs and custody re-determinations. (Doc. 37, Exh. 3.) At that time, DRO did not find any such refugees in its custody. (Doc. 37, Exh. 3.)

The Court finds that Petitioner Banjeglavic's case demonstrates compliance with the guidance memoranda. Although he was initially detained in excess of the time allotted, once his file was reviewed – pursuant to the new guidelines – he was promptly released.

Petitioner, lastly, attempts to discredit Respondents alleging that "throughout the course of this and similar petitions, Respondents have undertaken a series of actions that suggest – through their timing as well as their substance – an effort to circumvent the present litigation." Petitioner states that "[i]n response to habeas petitions challenging detention with no civil or criminal charges, Respondents – rather than refrain from detaining refugees – have merely issued then Notices to Appear in violation of established case law." Petitioner asserts that "Respondents have even gone so far as to submit questionable evidence that purports to prove that a refugee's placement in removal proceedings occurred at a prior date and was thus not a reaction to the filing of the habeas petition." The Court finds Petitioner's argument vague and conclusory, and concludes that Petitioner has failed to present any evidence that Respondents have failed to comply with DHS's written guidance.

Thus, finding that DHS's guidance memoranda is consistent with "current BIA and circuit case law" and that Respondents have complied with their policy, the Court determines that Respondents have met their burden and demonstrated that the "allegedly wrongful behavior could not be expected to recur." The "voluntary cessation" exception to mootness is inapplicable to this case.

Accordingly, in sum, the Court concludes that Petitioner's habeas petition no longer presents a case or controversy within the meaning of Article III, § 2, of the Constitution. Petitioner has been issued a final order of removal and was released under an Order of Supervision. His habeas claims are moot, and none of the narrow exceptions to the mootness doctrine apply to his case. The Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be **DENIED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 17th day of November, 2010.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28